UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIO ATKINS,

              Plaintiff,

    v.

COMMERCIAL OFFICE INTERIORS; and
TERRA SERVICES, INC. *d/b/a* Terra Resource
Group *also d/b/a* Allstaff,

              Defendants.

CASE NO. C06-1594-JCC

ORDER

This matter comes before the Court on motions for summary judgment from both Defendants (Dkt. Nos. 39 & 46), Plaintiff's Response (Dkt. No. 50), Defendants' Replies (Dkt. Nos. 51 & 52), and Plaintiff's Amended Opposition (Dkt. No. 57).[1] Having considered the papers submitted, the allegations

---

[1] Plaintiff's Amended Opposition was his second response to Defendants' summary judgment motions and was filed late. *See* Local CR 7(d)(3) (opposition papers to dispositive motions shall be filed and served "not later than the Monday before the noting date"). Defendant Commercial Office Interiors ("COI") asks that the Court either not allow the Amended Opposition or, alternatively, give Defendants the opportunity to reply. (COI Objection (Dkt. No. 58).)

    In light of the Federal Rules' policy favoring the resolution of cases on their merits, the Court declines to strike the Amended Opposition. COI's request for an opportunity to respond is moot, as the Court's consideration of the document does not change its decision to grant the motions for summary judgment.

ORDER – 1

1  in the Complaint, and the record in this case, and finding oral argument unnecessary, the Court hereby

2  GRANTS Defendants' motions for summary judgment (Dkt. Nos. 39 & 46), as follows.

3  **I.      BACKGROUND**

4          Plaintiff Mario Atkins, who is proceeding *pro se*, alleges that Defendants Terra Services, Inc.

5  ("Terra")[2], a temporary staffing agency, and Commercial Office Interiors ("COI"), a company for whom

6  Terra provided temporary staffers, discriminated against him on the basis of his race in violation of Title

7  VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Compl. 4 (Dkt. No. 1-2).) On January 23,

8  2006, Terra assigned Mr. Atkins to work at COI's Washington Mutual job site, located in downtown

9  Seattle. The parties agree that Mr. Atkins was asked to leave the Washington Mutual job site on the

10  morning of January 30, 2006, following a meeting with two COI employees, Gordon Hessel and Trevor

11  Graham. What took place at that meeting and in the days that followed is contested. However,

12  Defendants bring these motions for summary judgment, and for the purpose of deciding them, the Court

13  views the evidence presented by Mr. Atkins as true, and resolves all justifiable inferences in his favor.

14          Accordingly, the Court assumes the following facts. During Mr. Atkins' first week on the COI job

15  site, Terra gave Mr. Atkins the responsibility of informing Terra how many assigned temporary workers

16  were present at the beginning of each shift. (Massey Decl. ¶ 3 (Dkt. No. 44).) By all accounts, Mr. Atkins

17  took this duty very seriously. He reports speaking to "everyone" on the job site that Friday, January 27,

18  2006, letting them know that he had been appointed the "lead"[3] and informing them that Terra "wanted . .

19  . to do a head check at 6:00 every morning[.]" (Pl.'s Am. Resp. 2 (Dkt. No. 57).) Mr. Atkins claims that

20

21          [2]Plaintiff uses the names "Terra," "All Staff" and "Allstaff" interchangeably, all to refer to the

22  temporary staffing agency that assigned him to the job site where he alleges he suffered employment
    discrimination. Terra Services Inc. (sometimes referred to as "Terra Resource Group") acquired Allstaff

23  Temporaries in December 2005, approximately one month prior to the incident in question. (Massey
    Decl. ¶ 1 (Dkt. No. 44).) The Court will refer to this Defendant as "Terra."

24
          [3]Although Mr. Atkins describes his position as "lead," he does not allege that he had any

25  responsibilities above or beyond those of his co-workers other than reporting on their attendance.

26  ORDER – 2

he spoke to Rhonda Gaona, a Terra employee, that night and suggested to her that she call everyone on the job site to let them know about the "changes in the company policy." (*Id.*) Mr. Atkins also reports calling Tony Massey, a division manager at Terra, approximately six times over the weekend "to express my concerns, [but] he did not return my phone call." (*Id.*)

Mr. Atkins apparently believed the head count would be performed in the mornings by the basement elevator, and at 6:30 a.m. that following Monday, he waited there. When no one came to meet him, he went upstairs at approximately 6:50 a.m. and checked in several of his co-workers. Mr. Atkins then went back to his work station. (*Id.*)

### A.   January 30, 2006: Washington Mutual Job Site

At approximately 6:55 a.m., Mr. Hessel and Mr. Graham came to speak to Mr. Atkins at his work station. Mr. Atkins recalls the following conversation taking place:

| Mr. Hessel: | Mario[,] I have a problem [*sic*] have 8 unhappy guys and one happy one[.] I'm kicking you off the job. |
| Mr. Atkins: | Why, you been giving me compliments all week telling me what a good job [I] was doing. |
| Mr. Hessel: | I got people telling me you are telling them where to meet you in the morning. |
| Mr. Atkins: | I am only doing what my company asked me to do. |
| Mr. Hessel: | Nobody told me anything. |
| Mr. Atkins: | You have a cell phone[,] you should call Allstaff. |
| Mr. Hessel: | I am not calling nobody, I want you off this job. |
| Mr. Atkins: | You are not kicking [me] off this job for that[,] you are kicking me off this job because of [the] color of my skin. You probably never seen an African American lead person. |

(*Id.*) Mr. Atkins claims that in response to this last comment, Mr. Hessel nodded his head to indicate "yes." (*Id.*)

### B.   January 30, 2006: Terra's Response

Mr. Atkins went home and called Mr. Massey at Terra. He told Mr. Massey that he had been kicked off the job site for discriminatory reasons. (*Id.*) Mr. Massey denied that COI had discriminated against Mr. Atkins and told him that COI was offering Mr. Atkins a job at a different COI work site—a warehouse in Tukwila. Mr. Atkins claims he told Mr. Massey that the job offer "was a bunch of crap."

ORDER – 3

(*Id.*) However, Mr. Atkins agreed to go to the Tukwila job site in order to prove that this new job offer from COI was not legitimate. (*Id.*)

### C.    January 31, 2006: Tukwila Warehouse

When Mr. Atkins arrived at the Tukwila warehouse the following morning, unidentified COI personnel asked him who he was and told him that no one had asked for him. (*Id.* at 2–3.) Mr. Atkins was told to stand on the dock, where he waited for approximately 20 minutes before leaving the warehouse. At that point, Mr. Atkins reports:

> I went and called [Terra and] told [them] what happen [*sic*] Gary got on the phone and said now we need to talk about discipline, you walk off the job [.] Gary then said I was fired, I heard [T]ony [M]assey in the background saying [G]ary [n]o no don't do that [G]ary then said we wiil [*sic*] call you back after we figured out what to do . . . with you, I then cut ties with [Terra].

(*Id.* at 3.)

Mr. Atkins met with an EEOC investigator on February 8, 2006, and signed paperwork alleging that COI had discriminated against him. (EEOC Intake Questionnaire (Dkt. No. 43 at 8–11).) Approximately one month later, Mr. Atkins signed a charge of discrimination against Terra, which was filed with the EEOC and Washington State Human Rights Commission. (Dkt. No. 43 at 13.) The EEOC issued notices of right to sue in August 2006 (Dkt No. 3 at 5–6), and Mr. Atkins brought this action in November 2006.

## II.    SUMMARY JUDGMENT

Summary judgment motions are governed by Federal Rule of Civil Procedure 56, which provides in relevant part that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). Substantive law determines which facts are material, *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631–32

ORDER – 4

1    (9th Cir. 1987), and "[o]nly disputes over facts that might affect the outcome of the suit under the

2    governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*.,

3    477 U.S. 242, 248 (1986).

4           Once the moving party has met its burden, the burden shifts to the nonmoving party to "set out

5    specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *see also T.W. Elec. Serv., Inc.*,

6    809 F.2d at 630. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be

7    drawn in his favor." *Anderson*, 477 U.S. at 255. When the non-moving party's claims are factually

8    "*implausible*, that party must come forward with more persuasive evidence than would otherwise be

9    necessary[.]" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468

10   (9th Cir. 1987) (emphasis in original). If the nonmoving party fails to establish the existence of a genuine

11   issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v.*

12   *Catrett*, 477 U.S. 317, 323–24 (1986).

13          The Ninth Circuit has set a high standard for granting summary judgment in employment

14   discrimination cases: "we require very little evidence to survive summary judgment in a discrimination

15   case, because the ultimate question is one that can only be resolved through a searching inquiry—one that

16   is most appropriately conducted by the factfinder, upon a full record." *Schnidrig v. Columbia Mach.*,

17   *Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (internal citations and quotation marks omitted).

18   **III.    ANALYSIS**

19          Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., makes it illegal for an

20   employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

21   individual with respect to his compensation, terms, conditions, or privileges of employment, because of

22   such individual's race, color, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may show

23   violations of Title VII by proving, for example, disparate treatment or a hostile work environment.

24   *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991). Disparate treatment

25   discrimination generally focuses upon a particular adverse action (e.g., transfer of assignment or

26   ORDER – 5

1    termination caused by discriminatory animus), while a hostile workplace claim submits that the

2    harassment was so severe or pervasive that the work environment itself became abusive.

3            As noted above, Mr. Atkins is proceeding *pro se*, and in various documents filed with the Court

4    he frames his claim slightly differently. The Complaint itself alleges "termination" of employment.

5    (Compl. 2, 3 (Dkt. No. 1-2).) However, Mr. Atkins' response to Terra's First Requests for Admissions

6    appears to disclaim any argument that he was, in fact, actually terminated, and instead refers to his claim

7    as one for *constructive* discharge. (Resp. to First Req. for Admis. 4 (Dkt. No. 40 at 21) ("Denied I was

8    fired . . . I reported the discriminatory incident . . . both that day and the next . . . no corrective action

9    was being taken and I was force [*sic*] to tell them I could not come back to work for them (I took a

10   constructive discharge)"). In addition, the civil cover sheet signed by Mr. Atkins and filed together with

11   his Complaint asserts a "hostile work environment" claim. (Dkt. No. 1-3.) The Court, therefore,

12   considers this case to be based on two theories of Title VII employment discrimination: (1) disparate

13   treatment based on racial discrimination; and (2) hostile work environment, also based on racial

14   discrimination. Each of these distinct Title VII claims has different elements, and the Court considers

15   them separately. However, first, the Court addresses Mr. Atkins' claims as made against Terra, the

16   employment agency that placed him with COI.

17       **A.    *Claims Against Terra***

18           Mr. Atkins does not allege that any employees of Terra discriminated against him; instead, he

19   argues that Terra knew of COI's allegedly discriminatory conduct and failed to take adequate corrective

20   measures. This limited allegation is consistent with the Ninth Circuit's view of Title VII liability—it is

21   "'direct, not derivative,' meaning that '[a]n employer is responsible for its own actions or omissions' and

22   not vicariously liable for the conduct of others." *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 941 (9th

23   Cir. 2003) (quoting *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001)) (alteration in original).

24   Similar to the responsibility imposed upon an employer with regards to the harassment of an employee by

25   a nonemployee, Terra may be held liable only if it either ratified or acquiesced in COI's discrimination by

26   ORDER – 6

1    not taking immediate and/or corrective action when it knew or should have known of the conduct. *See,*

2    *e.g.*, *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 968 (9th Cir. 2002).

3         In support of his claim against Terra, Mr. Atkins reports that he spoke to Terra employee Tony

4    Massey on January 30, 2006, and told Mr. Massey that COI had fired him for discriminatory reasons. The

5    following day, Mr. Atkins claims to have "cut ties" with Terra, in a phone call he made to them after

6    leaving the Tukwila warehouse. (Pl.'s Am. Resp. 2 (Dkt. No. 57).)

7         Even if Mr. Atkins' claims against COI were able to survive summary judgment, the facts alleged

8    by Mr. Atkins are insufficient as a matter of law to support a Title VII claim against Terra. Mr. Atkins

9    does not allege that Terra was wrong to offer him placement at the Tukwila warehouse, and in taking

10   corrective action, employers are entitled to take temporary steps such as alternate placement while

11   determining whether a claim has merit. Moreover, by his own account, Mr. Atkins quit Terra within 24

12   hours of suffering the alleged discrimination. In so doing, he made it impossible for Terra to take any

13   meaningful corrective action. Finally, to the extent that Mr. Atkins claims he was constructively

14   discharged by Terra, "a plaintiff alleging a constructive discharge must show some aggravating factors,

15   such as a continuous pattern of discriminatory treatment." *Schnidrig*, 80 F.3d at 1412 (quoting *Sanchez*

16   *v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990)). A lag time of 24 hours in investigating a

17   discrimination complaint, without anything more, is insufficient as a matter of law to support such a

18   claim. For the foregoing reasons, the Court GRANTS summary judgment in favor of Terra on all of Mr.

19   Atkins' claims.

20        **B.   Disparate Treatment Claims**

21        Under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a

22   Title VII plaintiff alleging disparate treatment must first establish a prima facie case of discrimination. *Id.*

23   at 802; *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). Once the plaintiff has

24   made a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory

25   reason for its conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to

26   ORDER – 7

1    show that the employer's offered reason is a pretext for discrimination. *Vasquez*, 349 F.3d at 640.

2           The only evidence Mr. Atkins offers to support his claim that he was removed from the

3    Washington Mutual job site as a result of his race is his allegation that Mr. Hessel nodded when Mr.

4    Atkins stated, "You are not kicking [me] off this job [because eight other employees are unhappy with

5    me] you are kicking me off this job because of color of my skin. You probably never seen an African

6    American lead person." (Pl.'s Am. Resp. 2 (Dkt. No. 57).) Whether this allegation amounts to direct or

7    circumstantial evidence of discrimination dictates the proper standards applied in analyzing Mr. Atkins'

8    disparate treatment claim. While it is "not the province of a court to spin . . . evidence in an employer's

9    favor when evaluating its motion for summary judgment," *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115,

10   1129 (9th Cir. 2000), Mr. Atkins' interpretation of an ambigious head gesture made by Mr. Hessel is

11   appropriately defined as circumstantial evidence of discrimination. *See Vasquez*, 349 F.3d at 640 (defining

12   direct evidence as "evidence which, if believed, proves the fact [of discriminatory animus] without

13   inference or presumption") (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998))

14   (alteration in original).

15          Because Mr. Atkins presents only circumstantial evidence of discrimination, he must show that

16   the four requirements laid out in *McDonnell Douglas* are met in order to make a prima facie case.[4]

17   Further, although "[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . .

18   . . claims on summary judgment is minimal and does not even need to rise to the level of a preponderance

19   of the evidence[,]" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), where a plaintiff relies

20   on circumstantial evidence, the showing he must make at the pretext stage of the analysis is impacted:

21          Because direct evidence is so probative, the plaintiff need offer "very little" direct evidence to
            raise a genuine issue of material fact. But when the plaintiff relies on circumstantial evidence, that

22

23   _____

24          [4]The plaintiff must offer some evidence that he: (1) is a member of a protected class; (2)
     performed according to the employer's legitimate expectations; (3) suffered an adverse employment
     action; and (4) was treated less favorably than other employees similarly situated. *See, e.g.*, *Godwin*, 150
25   F.3d at 1220 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

26   ORDER – 8

evidence must be "specific and substantial" to defeat the employer's motion for summary judgment.

*Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) (internal citations omitted). In the instant action, even assuming Mr. Atkins makes the minimal showing required to establish a prima facie case, he fails to present sufficient evidence for a reasonable factfinder to conclude that the nondiscriminatory reasons provided by COI for removing Mr. Atkins from the Washington Mutual job site were pretexual.

COI presents evidence supporting its claim that Mr. Atkins was asked to leave the Washington Mutual job site because he was a disruptive employee who was resistant to instruction and incorrectly performed his job tasks. (Hessel Decl. ¶ 7 (Dkt. No. 49).) COI claims it received multiple complaints from Mr. Atkins' co-workers about Mr. Atkins' behavior, and submits statements from fellow workers Andrew Krahn and Ricardo Sims to that effect. (Dkt. No. 43 at 4, 6.) Mr. Hessel recalls that Mr. Atkins required his fellow temporary employees,

> to meet on the street every day at 5:45 a.m., and he prevented these coworkers from entering the jobsite until he led them upstairs. This was contrary to, and interfered with, the instructions I had specifically given to two or three key [Terra] employees. I had assigned these employees to different stations/reporting times, and [Mr. Atkins] interfered with and prevented these employees from reporting as directed.

(Hessel Decl. ¶ 8 (Dkt. No. 49).)

Mr. Graham and Mr. Hessel report that they initiated the January 30, 2006, conversation in order to talk to Mr. Atkins about his job performance and remind him that he was not a supervisor and did not have any authority over his coworkers. (Graham Decl. ¶ 8 (Dkt. No. 48).) During this conversation, they report that Mr. Atkins was insubordinate, abrupt and abusive, and became increasingly hostile and agitated, refusing to listen and making it clear that he would not alter his conduct. (*Id.* ¶¶ 9, 10 (Dkt. No. 48); Hessel Decl. ¶¶ 11, 12 (Dkt. No. 49).) Both also deny that race was a factor in the decision, and point out that of the nine temporary Terra employees working at the site, eight were African-American and one was Hispanic, and none of these other employees made any complaints about discrimination.

ORDER – 9

1  (Graham Decl. ¶¶ 5, 14, 15 (Dkt. No. 48); Hessel Decl. ¶¶ 5, 14 (Dkt. No. 49).)[5]

2       Mr. Atkins attempts to rebut COI's claim that it removed him from the Washington Mutual job

3  site for nondiscriminatory reasons by making several allegations attacking COI's credibility. The one

4  accusation relevant to these motions for summary judgment is Mr. Atkins' claim that Terra "got [co-

5  workers] Ricardo Sims and Andrew Krahn to give false statements." (Pl.'s Am. Resp. 3 (Dkt. No. 57).)

6  Mr. Atkins provides no evidence tending to prove that the statements signed by Mr. Sims and Mr. Krahn

7  and filed with the Court are "false." He simply attaches those statements as exhibits to his opposition

8  paperwork and states that they are false. (*Id.* at 3, 7, 8.)

9       These bare allegations, considered together with an ambiguous head gesture, and the fact that

10  when Mr. Atkins showed up at the Tukwila warehouse, the COI personnel there apparently had not

11  anticipated his arrival, are insufficient to rebut COI's proffered evidence that tends to show Mr. Atkins

12  was removed for nondiscriminatory reasons. To survive summary judgment, Mr. Atkins must provide

13  "specific and substantial" evidence that COI's nondiscriminatory explanations were pretextual—he has

14  not done so. Moreover, Mr. Atkins' response to Terra's First Request for Admissions indicates that he

15  acknowledges that he was not actually terminated; instead, he "took a constructive discharge." (Resp. to

16  First Req. for Admis. 4 (Dkt. No. 40 at 21). In general, "a single isolated incident is insufficient as a

17  matter of law to support a finding of constructive discharge." *Schnidrig*, 80 F.3d at 1411–12 (quoting

18  *Sanchez*, 915 F.2d at 431). A plaintiff must make a showing of "some aggravating factors, such as a

19  continuous pattern of discriminatory treatment." *Id.* at 1412. Accepting all of Mr. Atkins' allegations as

20  true, his working conditions were not so intolerable and discriminatory that a reasonable person would

21  

22      [5]Mr. Hessel and Mr. Graham also claim that Mr. Atkins at no time inquired as to whether he was
being removed from the site because of his race, nor did either directly or impliedly suggest to Mr. Atkins

23  that race was a motivating factor in the decision to remove him from the site. (Graham Decl. ¶ 12 (Dkt.
No. 48); Hessel Decl. ¶ 13 (Dkt. No. 49).) However, for the purposes of deciding Defendants' motions

24  for summary judgment, the Court assumes that Mr. Atkins made the statement he claims to have made
and that he witnessed Mr. Hessel move his head in such a way that made Mr. Atkins believe Mr. Hessel

25  was nodding "yes."

26  ORDER – 10

1   feel forced to resign. Accordingly, the Court GRANTS summary judgment in favor of COI on Mr.

2   Atkins' claims of wrongful discharge, whether viewed as actual or constructive.

3       **C.      Hostile Work Environment Claim**

4       Mr. Atkins next asserts that COI's conduct toward him created a hostile work environment. To

5   prevail on a hostile work environment claim premised on racial discrimination, a plaintiff must show that:

6   (1) he was subjected to conduct of a racially discriminatory nature; (2) the conduct was unwelcome; and

7   (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment

8   and create an abusive work environment. *Vasquez*, 349 F.3d at 642.

9       To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at
        all the circumstances, including the frequency of the discriminatory conduct; its severity; whether

10      it is physically threatening or humiliating, or a mere offensive utterance; and whether it
        unreasonably interferes with an employee's work performance. In addition, the working

11      environment must both subjectively and objectively be perceived as abusive.

12  *Id.* (internal quotation marks and alteration omitted). The elements to prove a hostile work environment

13  are the same for both racial harassment and sexual harassment, making cases analyzing both types of

14  harassment relevant here. *Id.*

15      Mr. Atkins complains of only one incident of racially discriminatory conduct—Mr. Hessel's

16  nodding his head to indicate "yes," when Mr. Atkins accused him of asking him to leave the Washington

17  Mutual job site because he was an African-American lead person. Although the Ninth Circuit has yet to

18  decide whether a single incident of harassment can ever be sufficient to establish a hostile work

19  environment, "[i]f a single incident can ever suffice . . . the incident must be extremely severe." *Brooks v.*

20  *City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000). Mr. Hessel's nodding his head "yes," cannot

21  qualify as an "extremely severe" incident of racial harassment. To compare, in *Sanchez v. City of Santa*

22  *Ana*, 936 F.2d 1027 (9th Cir. 1990), the Ninth Circuit held that no reasonable jury could find a hostile

23  work environment "despite allegations that the employer posted a racially offensive cartoon, made

24  racially offensive slurs, targeted Latinos while enforcing rules, provided unsafe vehicles to Latinos, did

25  not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs

26  ORDER – 11

1    because they were Latino." *Vasquez*, 349 F.3d at 643 (citing *Sanchez*, 936 F.2d at 1031, 1036). Mr.

2    Atkins' allegations are simply insufficient as a matter of law, and the Court GRANTS summary judgment

3    in favor of COI on Mr. Atkins' hostile work environment claim.

4    **IV.    CONCLUSION**

5            For the foregoing reasons, Defendants' motions for summary judgment are GRANTED and

6    Plaintiff's Complaint is DISMISSED as to both Defendants. Terra's Reply contains a request the Court

7    strike "the irrelevant, unfounded accusations in Plaintiff's response, as well as the irrelevant and

8    unauthenticated hearsay documents attached thereto." (Terra's Reply 8 (Dkt. No. 51).) This request to

9    strike is DENIED as MOOT. The Clerk is DIRECTED to CLOSE this case. All pending motions in this

10   matter are DENIED as MOOT.

11           SO ORDERED this 20th day of December, 2007.

John C. Coughenour
United States District Judge

26   ORDER – 12